# UNITED STATES *v.* SALEN.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 506.   Argued October 23, 1914.—Decided November 30, 1914.

The suppression clause in the declaration required to be made by agent-consignees of imported goods by sub-section 6 of § 28 of the Tariff Act of August 5, 1909, c. 6, 36 Stat. 11, 95, relates to the omission of matter proper to be included in the invoice and account attached, and not to independent facts.

In construing a provision of the Tariff Act relating to entry of merchandise, courts should consider the purpose of such provision in the light of the customs regulations applicable to such entry; and in this case this court will not say that one of a number of acts required to be done related to undefined extraneous general matter when all of the other acts related to particular defined subjects connected with the importation.

The meaning of words is affected by their context; and words used in a highly penal statute will be interpreted in a narrower sense as referring to things of the same nature as those described in an enumerated list, although standing alone they might have a wider meaning.

This limited interpretation given to sub-section 6 of § 28 of the Tariff Act of 1909 does not mean that Congress has deprived the collector of means of obtaining extraneous information, as there are other statutory provisions for examinations of the owner, consignee or agent for that purpose.

A statute such as the suppression clause,—sub-section 6 of § 28 of the Tariff Act of 1909,—will not be so interpreted as to spread a net that might catch the unwary as well as the guilty, or in a manner contrary to the fixed rules of interpretation; by making it relate to unenumerated matters as well as those enumerated, thus fixing no standard by which to draw the line between innocent silence and felonious concealment:

SALEN was indicted for making false statements in the sworn declaration required of Consignees by the Tariff Act of 1909. August 5, 1909, c. 6, 36 Stat. 11, 93. The first five counts charged that in entering laces in February,

1910, and January and February, 1913, he had falsely sworn that the·Consular invoices attached were the only invoices covering the shipments, when he well knew that there were others in existence. The court overruled the demurrer to these counts and they are not involved in this case.

The sixth count related to a Declaration made by Salen · on March 17, 1913, in making an entry of foreign laces covered by Consular Invoice No. 7893. Salen was therein charged with having fraudulently. concealed from the Collector the existence of certain material facts and thereby had falsified the required statement in the sworn declaration "that nothing has been on my part, nor to my knowledge on the part of any other. person, concealed or suppressed, whereby the United States may be defrauded of any part of the duty lawfully due on the said goods." This count sets out at great length and in narrative form certain evidentiary facts which may be thus summarized:

Salen was the New York agent and primary consignee of Goetz, a French exporter, who, for eight years, had been shipping laces to Salen for sale and delivery to Robinson, the purchaser and ultimate consignee.

When the last consignment arrived in New York, Salen presented the declaration to the Collector, attaching thereto, as required by law, the bill of lading; a list or entry account of the goods; and the consular ˙invoice No. 7893. He paid the duty assessed on the basis of the foreign values as given in the invoice, and thereupon removed the goods and delivered them to Robinson the purchaser. This count of the indictment further charged . that Salen knew that the foreign values had been falsely and fraudulently stated in the previous invoices; that such foreign values named in those invoices was uniformly greatly below the prices at which the laces were sold in the United States; that in making the Declaration as to the shipment ·represented by Consular Invoice No. 7893,

Salen concealed the fact that it was one of the series of shipments in which Goetz and Robinson had fraudulently concealed the great and uniform discrepancy between the foreign values named in the invoices and the prices at which the lace was sold in the United States.

It was charged that this concealment was the suppression of a fact by which the United States may have been defrauded of its lawful duty, for if Salen had communicated the facts the Collector would have called for a reappraisement of the laces and their undervaluation would have been disclosed.

The defendant demurred on the ground that there was no positive averment that the goods were undervalued but only an argumentative statement of facts the existence of which did not raise the legal conclusion that there was any undervaluation and that the count failed to charge facts sufficient to constitute an offense under sub-section 6 of § 28 of the act of August 5, 1909, c. 6, 36 Stat. 11, 95, or any other statute of the United States. The demurrer was sustained on the ground that the facts stated did not constitute an offense under the statute, and the case was then brought here by the Government under the Criminal Appeals Act of March 2, 1907, c. 2564, 34 Stat., 1246.

*Mr. Assistant Attorney General Warren* for the United States:

The case is properly before this court under the Criminal Appeals Act.

The penalties imposed by customs law are intended for the prevention of fraud, the protection of the revenue, and the protection of honest importers. The act should be so construed as to give effect to this intention in general and to the evident intent of Congress in particular to require of the importer, by means of the provisions of sub-section 5, the observance of the highest degree of good faith toward the Government.

The words "nothing has been concealed or suppressed," as used in sub-section 5, do not mean nothing has been concealed or suppressed in the entry and invoice. The history of the statute shows that Congress had intended to make the scope of the declaration a wide one, and to impose an obligation not to suppress or conceal anything (whether in the entry and invoice or not), which might tend to defraud the United States of duties.

One knowing certain facts which would have influenced any ordinary reasonable man acting as collector, in investigating or ordering an investigation or appraisement or reappraisement of values, and concealing such knowledge on his part, certainly conceals "something" and swears falsely when he makes oath that "nothing has been concealed or suppressed by him."

The importer's duty of disclosure to the Government is an obligation *uberrimæ fidei* as broad as that imposed upon the insured in marine insurance.

Whether a knowledge of prior fraudulent shipments constitutes a suppression of "nothing" may be tested by considering whether the party could have been examined under oath regarding such knowledge, on a summons under sub-section 15 of the act which gives the appraiser and collector a power to examine "touching any matter or thing which they may deem material."

It may also be tested by considering whether evidence that such party knew of prior frauds in undervaluation would be admissible if he should be indicted for perjury in swearing to the present declaration that the invoice produced by him exhibits the actual market value, etc.

It is not necessary to allege in the indictment or to prove that the United States was actually defrauded of duties. It is only necessary to allege facts calculated to deprive, or of a character which might deprive, the United States of such duties.

Proof of an intent to defraud is-not required by subsections 5 and 6 to be alleged or proved. All that is necessary is (a) a false statement, (b) knowingly made—*i. e.,* made with knowledge of its falsity.

The statement in the declaration was "material thereto," *i. e.,* material to the declaration.

In support of these contentions see *Bollinger's Champagne,* 3 Wall. 560, 564; *Cliquot's Champagne,* 3 Wall. 114, 145; *Columbia Ins. Co. v. Lawrence,* 10 Pet. 507, 516; *Sun Mutual Ins. Co. v. Ocean Ins. Co.,* 107 U. S. 485, 509; *Taylor v. United States,* 3 How. 197, 207; *United States v. Biggs,* 211 U. S. 507, 518; *United States v. Birdsall,* 233 U. S. 223; *United States v. Bitty,* 208 U. S. 393; *United States v. Campbell,* 10 Fed. Rep. 816; *United States v. Cargo of Sugar,* 3 Sawyer, 50, 51; *United States v. Carter,* 231 U. S. 492; *United States v. Doherty,* 27 Fed. Rep. 730, 733–735; *United States v. Corbett,* 215 U. S. 233, 237; *United States v. De Rivera,* 73 Fed. Rep. 679; *United States v. Fawcett,* 86 Fed. Rep. 900; *United States v. Heinze,* 218 U. S. 532, 540; *United States v. Heinze,* No. 2, 218 U. S. 547; *United States v. Keitel,* 211 U. S. 370, 385; *United States v. Kissel,* 218 U. S. 601, 606; *United States v. Leng,* 18 Fed. Rep. 15; *United States v. Mason,* 213 U. S. 115, 122; *United States v. Mescall,* 215 U. S. 26, 31; *United States v. Miller,* 223 U. S. 579, 602; *United States v. 19 Bales of Tobacco,* 112 Fed. Rep. 779; *United States v. 99 Diamonds,* 139 Fed. Rep. 961; *United States v. One Bag of Wheat,* 166 Fed. Rep. 562; *United States v. Pullen,* 226 U. S. 525, 535; *United States v. 66 Cases of Cheese,* 163 Fed. Rep. 367; *United States v. Stevenson,* 215 U. S. 190, 195; *United States v. 20 Boxes of Cheese,* 163 Fed. Rep. 369; *United States v. 26 Bales of Boots,* 3 Ware, 205, 210; *United States v. Wood,* 14 Pet. 430; and see also 1 Stat. 627, 657; 3 Stat. 729, 730; 12 Stat. 737; 18 Stat. 190; 22 Stat. 488; 26 Stat. 407; 34 Stat. 1246; 36 Stat. 11, 92; Rev. Stat., §§ 2841, 2864.

*Mr. Marion Erwin*, with whom *Mr. Frederick M. Czaki* was on the brief, for defendant in error:

Sub-section 6 is either a perjury statute, or, at least, one in the nature of a perjury statute. It is highly penal. See act of March 1, 1823, § 4; Rev. Stat., § 2841; *United States* v. *Auffmordt*, 122 U. S. 197, 204; Customs' Administration Acts of June 10, 1890, 26 Stat. 132; August 5, 1900, 36 Stat. 94.

The suppression referred to relates wholly to things concealed or suppressed in the written entry and invoice. It obviously means things relating to the character, quantity, quality or cost of the goods, or other facts concealed or suppressed which should have been fairly stated in the invoice or written entry constituting the representation, and by the acceptance of which the collector might be deceived, and thus the United States might be defrauded. *United States* v. *Wood*, 14 Pet. 430.

Rev. Stat., § 2839, was repealed by the Customs Administrative Act of June 10, 1890. In its place was substituted sub-section 6 which prescribed punishment or forfeiture for making "any" false statement in the declaration material thereto.

The indictment in the case at bar does not charge that the goods entered were manufacturer's goods. But if it did, there was no requirement that the selling price in this country should be disclosed. Notwithstanding these changes in the statute, the Auffmordt decision is as pertinent now as it was then on the point, that a disclosure of things relating to values at other times and places not provided to be disclosed by the forms prescribed—such as the value or selling price in this country—are not within the purview of the statute, and hence cannot be made the basis of forfeiture much less of criminal prosecution for suppression. They are not "material" to the declaration. *United States* v. *Cargo of Sugar*, 3 Sawyer, 46.

The things alleged to have been suppressed were not

material to the declaration within the meaning of the statute; nor is there any averment that defendant had been called upon under sub-sections 15 or 11 to make disclosures of the facts charged to have been suppressed. *United States* v. *Doherty,* 27 Fed. Rep. 731; *United States* v. *Calhoun,* 184 Fed. Rep. 499, 504; *Gulbenkian* v. *United States,* 153 Fed. Rep. 858.

The importer is not guilty of a criminal offense under sub-section 9 even though the entry is based upon invoices in which the consignor has falsely and fraudulently misstated the cost or values, unless the importer knows or believes that they are so false and fraudulent, and even though the use of such false entry and invoice should result in depriving the United States of a portion of its duties. *United States* v. *1150½ Pounds of Celluloid,* 82 Fed. Rep. 627, 633; *581 Diamonds* v. *United States,* 119 Fed. Rep. 556, 560; *United States* v. *Bishop,* 125 Fed. Rep. 181; *United States* v. *99 Diamonds,* 139 Fed. Rep. 961; *United States* v. *75 Bales Tobacco,* 147 Fed. Rep. 127; *United States* v. *One Silk Rug,* 158 Fed. Rep. 974; *United States* v. *9 Bales Tobacco,* 112 Fed. Rep. 779; *Markham* v. *United States,* 160 U. S. 325.

Suppression by which the United States may be defrauded is limited to things within the scope of the disclosures required to be made in the stereotyped form of declaration and papers attached, constituting the representation.

There can be no fraud without a representation, express or implied, where there is a duty or obligation imposed upon the party to speak. For definition of "fraud" see Black's Law Dict.; 20 Cyc. 10; 19 Cyc. 403.

This court will not give the statute a construction which would place declarants in such an unfair situation, and make the statutory forms prescribed a snare to entrap those who rely upon their sufficiency. *Hawaii* v. *Mankichi,* 190 U. S. 197, 214.

Words used in a statute by which they are not defined are given the same meaning as at common law. *Swearingen* v. *United States*, 161 U. S. 446, 451; *Keck* v. *United States*, 172 U. S. 434, 446. And see *Mutual Life Ins. Co.* v. *Ocean Ins. Co.*, 107 U. S. 485, distinguished; 3 Cooley, Briefs on Insurance, 2011; *Mercantile Ins. Co.* v. *Folsom*, 18 Wall. 237, 253.

. The omission, in the suppression clauses in forms (1) and (2) of sub-section 5, of the words "in the said entry or invoice," was not intended to enlarge the scope of those clauses beyond the meaning of the suppression clause of forms (3) and (4). *Lawrence* v. *Allen*, 7 How. 793; *Brown* v. *Duchesne*, 19 How. 183; *Atkins* v. *Fiber Disintegrating Co.*, 18 Wall. 272; *Pollard* v. *Bailey*, 20 Wall. 520; *Petri* v. *Commercial Bank*, 142 U. S. 644; *McKee* v. *United States*, 164 U. S. 287, 293; *Smith* v. *The People*, 47 N. Y. 330. See also Endlich on Interpretation, § 378, p. 528; *Morris* v. *Mellin*, 6 B. & C. 446; *Bennett* v. *Daniel*, 10 B. & C. 500; *Bryan* v. *Child*, 1 L. M. P. 429; *Myser* v. *Veitch*, L. R. 4 Q. B. 649; *R.* v. *Tone*, 1 B. & Ad. 561.

Charges of suppression of a belief in the happening of a future event are argumentative, uncertain, hypothetical and duplicitous and surplusage. *United States* v. *Carll*, 105 U. S. 611; 19 Cyc., p. 394; *United States* v. *Keitel*, 211 U. S. 370, 397; *United States* v. *Kissel*, 218 U. S. 601, 606.

MR. JUSTICE LAMAR, after making the foregoing statement of facts, delivered the opinion of the court.

This writ of error raises the question as to whether the suppression clause in the declaration, required to be made by agent consignees of imported goods (36 Stat. 95), relates to the omission of matter proper to be included in the invoice and account attached;—or to independent facts which, if brought to the attention of the Collector,

would have excited his suspicion and induced him to institute a special inquiry as to the value of the merchandise mentioned in the account and invoice.

No case directly in point has been cited; but counsel have traced the history of the clause from the act of 1799, which required only one form of declaration from all importers, through the subsequent statutes, which, like the Tariff Act of 1909, provide for slightly different forms, according as the entry is made by owner, manufacturer, consignee, or agent. (1 Stat. 627, 656; 3 Stat. 729, 730; 22 Stat. 488, 524; 26 Stat. 131, 132; 36 Stat. 11, 93.) Under the act of 1799 every importer had to attach the consular invoice and entry account and swear that he "had not in the said entry or invoice concealed or suppressed anything" whereby the Government might be defrauded of its duty. This clause is still retained in the form required to be signed by owner and manufacturer. Where the goods are entered by an agent consignee he makes Declaration that "nothing has been on my part, nor to my knowledge on the part of any other person, concealed or suppressed, whereby the United States may be defrauded of any part of the duty lawfully due on the said goods, wares, and merchandise." Much of the argument was addressed to the effect of this difference in the language in the respective forms of the several declarations. 36 Stat. 93–95.

Counsel for Salen insist that this difference is due to the fact that the suppression clause in the consignee's declaration was included in a sentence all the terms of which related to invoice and entry. The declaration to be signed by owner and manufacturer (36 Stat. 94, 95) was in two sentences, and as the last of the two contained the suppression clause, it was necessary, from a grammatical point of view, to mention invoice and account as antecedents. It is argued that the owner's statement conveyed the same meaning as was otherwise expressed in

the suppression clause of the consignee's declaration.  On the other hand the Government contends that the difference in phraseology indicated an intent to require the consignee to disclose matters as to which no requirement was made where the goods were entered by owner or manufacturer.

Congress, of course, could have legislated in the same statute so as to make a distinction between consignor and consignee.  But no satisfactory reason is given why Congress should have imposed no penalty upon an owner for concealing a great and uniform difference between invoice values and selling prices, while at the same time making the agent guilty of a felony for suppressing exactly the same fact.  The moral quality of the act was the same whether the concealment was by owner or agent; the result to the Government was the same, and all doubtful or ambiguous language, in a statute covering the same subject, should be construed on the natural supposition that Congress required identity of disclosures and provided identity of punishment for identity of concealment.

In arriving at the meaning of the clause on which this indictment is founded it may be helpful to consider the purpose of the statute, in the light of the Customs Regulations applicable to the entry of foreign merchandise at a domestic port.

Foreign value is the basis on which *ad valorem* duties are imposed (36 Stat. 101, § 18), and Congress has made various provisions to enable collectors and appraisers to obtain information as to such foreign values.  To that end it authorizes them to examine all importers or consignees under oath so as to secure from them a statement of any facts which might shed light on the amount of duty to be paid.  Any false statement made on such examination subjects them to indictment and punishment as for a felony (June 10, 1890, c. 407, 26 Stat. 131, 139, §§ 16, 17).

But the Documents. attached to the Declaration are the primary source of information as to value. They consist of a Consular Invoice, [prepared by the consignor, showing a list of the goods and their foreign value at the date of exportation]; an Entry or Account, [prepared by the consignee, showing marks, numbers, contents, quantity, invoice value, dutiable value, and the rate of duty of the goods, Customs Regulations, 217] and also the Bill of Lading, [prepared by the Master of the vessel]. If these three papers, prepared by three different persons, have been truly and correctly made they contain all the information needed to assess the duties. In view therefore of the importance of these Documents the statute makes specific provisions by which they are to be verified, and as will appear from an analysis of the declaration (36 Stat. 93), the consignee states in the first sentence [1] of the Declaration;

---

[1] DECLARATION OF CONSIGNEE, IMPORTER, OR AGENT, WHERE MERCHANDISE HAS BEEN ACTUALLY PURCHASED.

I, ———— ————, do solemnly and truly declare that I am the consignee, importer, or agent of the merchandise described in the annexed entry and invoice; that the invoice and bill of lading now presented by me to the collector of ———— are the true and only invoice and bill of lading *by me received of all* the goods, wares, and merchandise imported in the ————, whereof ———— is master, from ————, for account of any person whomsoever for whom I am authorized to enter the same; that the said invoice and bill of lading *are in the state in which they were actually* received by me, and that I do not know or believe in the existence of any other invoice or bill of lading of the said goods, wares, and merchandise; that the entry now delivered to the collector contains a just and true account of the said goods, wares, and merchandise, according to the said invoice and bill of lading; that nothing has been on my part, nor to my knowledge on the part of any other person, concealed or suppressed, whereby the United States may be defrauded of any part of the duty lawfully due on the said goods, wares, and merchandise; that the said invoice and the declaration therein are in all respects true, and were made by the person by whom the same purport to have been made; and that if at any time hereafter.

"(1) That he is the consignee of the merchandise described in the annexed *entry and invoice;*

(2) that the *invoice* and *bill of lading* are the true and only *invoice* and *bill of lading;*

(3) that they are in the state in which they were actually received by him;

(4) that he does not know or believe in the existence of any other *invoice* or *bill of lading;*

(5) that the *entry* delivered to the Collector contains a just and true account of the merchandise according to the *invoices;*

(6) that nothing has been suppressed by him or to his knowledge on the part of any other person whereby the United States may be defrauded of any part of the duty lawfully due on the merchandise;

(7) that the *said invoice* and the declaration therein are in all respects true and were made by the person by whom they purport to have been made;

(8) that if at any time he discovers any error in the

---

I discover any error in the said invoice, or in the account now rendered of the said goods, wares, and merchandise, or receive any other invoice of the same, I will immediately make the same known to the collector of this district. And I do further solemnly and truly declare that to the best of my knowledge and belief (insert the name and residence of the owner or owners) is (or are) the owner (or owners) of the goods, wares, and merchandise mentioned in the annexed entry; that the invoice now produced by me exhibits *the actual cost* at the time of exportation to the United States in the principal markets of the country from whence imported of the said goods, wares, and merchandise, and includes and specifies the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, whether holding liquids or solids, which are not otherwise specially subject to duty under any paragraph of the tariff act, and all other costs, charges, and expenses incident to placing said goods, wares, and merchandise in condition, packed ready for shipment to the United States, and no other or different discount, bounty, or drawback but such as has been actually allowed on the same.

*said* invoice, or in the account *now rendered*, he will immediately make the same known to the Collector,   .   .   .

It will be seen that the Declaration was not only intended to secure an affirmative statement as to the genuineness of the documents and of the correctness of what was actually therein set out, but the consignee was also required to make a negative averment that nothing had been suppressed or concealed by himself or, so far as he knew, by any one else—that is, nothing had been suppressed or concealed in the Account [prepared by the consignee]; in the Consular Invoice [prepared by the exporter]; or in the Bill of Lading [prepared by the Master of the vessel]. Seven of the eight clauses distinctly related to Documents. To say that the sixth clause in this enumeration was intended to embrace undefined extraneous matter, would be to suddenly depart from the particular to the general and back again from the general to the particular;—from the particular subject of Documents, to which the attention of the affiant had been specially directed by the first five clauses, into a general field of wide and indefinite scope and—in the seventh clause—again to return to the particular subject of Documents. Such an interpretation would give an exceedingly liberal construction to a statute defining a felony. It would ignore the fact that the meaning of words is affected by their context and violate the settled rule that words which standing alone might have a wide and comprehensive import will, when joined with those defining specific acts, be interpreted in their narrower sense and understood to refer to things of the same nature as those described in the associated list, enumeration or class. *Cf. Virginia* v. *Tennessee*, 148 U. S. 503, 519; *United States* v. *Chase*, 135 U. S. 255, 258; *Neal* v. *Clark*, 95 U. S. 704, 708.

The fact that under this rule the general language of the suppression clause is to be restricted to the Documents to which all the other clauses in the sentence refer,

does not, of course, mean that Congress has deprived the Collector of the means of obtaining information as to extraneous facts that might assist him in passing upon questions of value or in determining whether there had been any violation of the tariff law.

But the method by which that information is to be obtained is the examination of the owner, consignee or agent under oath, 26 Stat. 139; 36 Stat. 100, §§ 15, 16; Customs Regulations, 1908, § 865. The very fact that provision is made for such examination is itself a clear indication that there may be material matter, not proper for inclusion in the declaration, but which might still be important in the assessment of the duty. But to say that in signing the statutory form of declaration consignee should in effect answer specific questions and at the same time be required on peril of committing a felony to disclose extraneous evidentiary facts as to which no direct question was asked and to which his attention was not directed is to make the declaration serve a purpose for which it was not intended and spread a net that might catch the unwary as well as the fraudulent consignee. *United States* v. *Reese*, 92 U. S. 214, 221. For, under the contention of the plaintiff in error, it is not necessary that Salen should have intended to defraud or that the Government should have been actually defrauded. The crime was committed if the United States "may have been defrauded." So that even if the foreign value on which the duty was assessed had been truly stated in the declaration, the consignee would yet be guilty of a felony if he failed to call attention to facts which would have excited the Collector's suspicion and induced him to demand a reappraisement. Such an interpretation of the statute is not only contrary to the rule which restricts the operation of the suppression clause to the particular matters enumerated in all other parts of the printed declaration, but would fix no standard by which to draw

the line between innocent silence and felonious conceal-
ment.

*Judgment affirmed.*

MR. JUSTICE McREYNOLDS took no part in the consider-
ation and decision of this case.