**SUNSET SCAVENGER CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVENUE v. SUNSET SCAVENGER CO., Inc.**

No. 7999.

Circuit Court of Appeals, Ninth Circuit.

June 8, 1936.

James C. Espey, of San Francisco, Cal., for taxpayer.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Joseph M. Jones, and Louise Foster, Sp. Assts. to Atty. Gen., for the Commissioner.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Petitions for review of the decisions of the Board of Tax Appeals in three proceedings, which were consolidated before the Board, have been filed by the Commissioner and Sunset Scavenger Company, Inc., hereinafter referred to as petitioner.

Petitioner is a corporation and claimed exemption from taxation for the years 1927, 1928, and 1929, under Revenue Act of 1926, ch. 27, § 231 (12), 44 Stat. 40, 26 U.S.C.A. § 103 note. The Commissioner

determined that petitioner was not exempt from taxation and his determination was upheld by the Board. Petitioner asks review of this determination. In the returns filed by petitioner, it claimed as deductions payments for salaries made, and also claimed as deductions amounts expended to avert legislation unfavorable to petitioner. With respect to the deduction for salaries, the Board reduced the amount claimed by the petitioner, and petitioner asks review of such action. With respect to the reduction claimed for the expenditures made to avert passage of the legislation, such deduction was allowed by the Board, and the Commissioner asks review of that action. The returns for the years 1927, 1928, and 1929 are in issue.

From the facts found by the Board, it appears that prior to 1919, garbage collection in the San Francisco Bay region was being made by individuals, with helpers, who had a particular route on which the calls were made. Under this system there was competition, and individual routes and districts overlapped. To avoid this there was organized by the individuals in 1919 an association or partnership, which fixed the routes. As a result, costs were reduced and the profits increased. The profits were divided between the members upon some equitable basis.

The next development is explained by the Board as follows: "Soon, however, dissension arose. Certain of the members taken into the association were indifferent scavengers, with little natural aptitude for garbage collection. They were the type which merely dumps the can and drives on ignorant of the fact that a little time spent showing courtesies to the housewife creates for the garbage man a personality or good will which is reflected in added business. Through the operation of the association these less capable scavengers were brought into contact with the really expert type and through these contacts were instructed in the finer technique of the work. Some of these men, however, after thus acquiring proficiency, began withdrawing from the association, taking their equipment, newly acquired training and good will, and began operating as independents, able to offer much more serious competition than before."

As a result, petitioner corporation was formed under the laws of California. The individual members of the association transferred their equipment to petitioner, and received therefor shares of stock in the corporation.

The other material facts were stated by the Board as follows:

"Additional equipment was purchased by the corporation and sufficient assigned to each route or district to serve its needs. All of the members rendered service as in the past. One member was employed as foreman in charge of each route. Other members might work with him on the truck and in addition non-member 'helpers' were employed at $5.50 per day. The actual work of garbage collection began at 4:30 a. m. and ceased about 4:30 p. m. at which time the 'helper's' work was over. The members, however, although doing similar work to the helpers during the day, had the additional work of keeping the route book of customers and making collections of the charges for service. This was done in the late afternoon and early evening, usually being completed about 8 p. m. The members also took care of the horses, wagons and trucks they used.

"From its organization and during the years here involved the corporation kept few records and its methods of paying its expenses and distributing the proceeds of its business were quite simple. A meeting of all members or stockholders was held twice a month. To this meeting each member brought his route book showing all collections made for service or for sale of junk, paper, bottles, etc. Against his total he had taken credit for payments made by him to his helpers and for feed, gasoline, oil, etc. Each member passed his book to his neighbor for check and audit and when each account was approved the individual member paid onto the table the amount shown to be due from him. The president of the corporation then took from the aggregate the sum estimated to be necessary for general corporate expense for the next two weeks and the balance was divided equally among all the members. The officers of the corporation had few duties and received as such no additional pay. They worked in collecting garbage as other members."

The statute (Revenue Act of 1926, c. 27, § 231, 26 U.S.C.A. § 103 note) under which petitioner claims exemption provides as follows:

"Sec. 231. The following organizations shall be exempt from taxation under this title [chapter]—* * *

"(12) Farmers', fruit growers', or like associations organized and operated on a cooperative basis (a) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (b) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. Exemption shall not be denied any such association because it has capital stock."

■ Under this statute, exemption is granted to "farmers', fruit growers', or like associations." Petitioner contends that the character of an organization is to be determined by its acts rather than by its form,[1] and that "the petitioner corporation was formed for the purpose of mutual cooperation—to enable the association to operate as a unit, rather than as independent scavengers, as was the case prior to organization."

Petitioner also says: "Assuming, for the purpose of argument, that 'like associations' refers only to farmers' co-operative, (which of course petitioner does not concede), and that 'product' means a farm product of some kind, then the word 'produce' might be narrowly construed to refer back to 'farmers' and 'farm products', and have reference only to provisions or farm-products collectively."

We believe, as the commissioner contends, that under the principle of ejusdem generis, the words "like associations" are limited by the words "farmers'" and "fruit growers'" and as thus limited[2] mean only such associations as market agricultural products, or purchase supplies and equipment for those who are engaged in producing agricultural products. See Garden Homes Co. v. Commissioner (C.C.A.7) 64 F.(2d) 593. Under such construction, petitioner is not one of the associations exempt from taxation.

Petitioner also says: "To hold that petitioner is not a co-operative association is to declare the Revenue Acts of 1926 and 1928 (44 Stat. 9, 45 Stat. 791) unconstitutional." We do not express an opinion as to whether or not petitioner is a co-operative association. We are holding that petitioner is not exempt from taxation as one of those associations which under the terms of the act are exempt.

■ Petitioner also contends that there was a mutual agreement contract (implied perhaps) between the members and petitioner whereby the members were to receive all the net profits; that because of such agreement there could be no moneys belonging to petitioner, and therefore petitioner would have no profits. However novel this argument may be, the opinion of the Board does not disclose that the argument was ever presented to it. Further, there is no finding that any such agreement was made. Under such circumstances we cannot consider the point. See General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154; Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L. Ed. 511.

The facts found by the Board relating to salaries paid are as follows: "In making its returns for the years in question petitioner took deduction, as salaries and bonuses, of the amounts distributed as above described to the members. In determining the deficiencies respondent has determined that a reasonable salary for each of the approximately 175 members, for services performed, was $3,600 per year, and has increased net income reported for each year by the amount distributed in such year, as above set out, in excess of aggregate salaries in this amount."

Section 234 of the Revenue Act of 1926 (44 Stat. 41) provides:

"Sec. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable

---

1 Citing among others: Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001, 33 A.L.R. 520; United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180; McCoach v. Minehill & S. H. R. Co., 228 U.S. 295, 33 S.Ct. 419, 57 L. Ed. 842; Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 55 L.Ed. 428.

Cf. Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 373, 56 S.Ct. 285, 80 L.Ed. 278.

2 For the principle of ejusdem generis, see United States v. Stever, 222 U.S. 167, 174, 32 S.Ct. 51, 56 L.Ed. 145; United States v. Salen, 235 U.S. 237, 35 S.Ct. 51, 59 L.Ed. 210.

year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered."

Whether or not the salaries are reasonable is a question of fact, and the finding of the board is conclusive if supported by any substantial evidence. General Water Heater Corp. v. Commissioner (C.C.A. 9) 42 F.(2d) 419. The Board found that the flat amount of $3,600 for each member was "not inadequate, even upon the daily wage basis contended for by petitioner." Petitioner introduced evidence of members that a reasonable rate was $16 or $17 a day, and also introduced evidence that street sweepers of the city and county of San Francisco were paid during the years in issue $5.50 for an eight hour day (except Saturday), and were paid double time for overtime work. Petitioner has presented an elaborate table showing that if street sweepers worked as many hours as the members, they would be entitled to receive $6,090 a year at their rate of pay. On the basis of the amount paid such street sweepers, petitioner contends "that each member of petitioner company was entitled to receive not less than $6,120.00 per year."

The Board was not impressed with this argument, evidently because it is incredible that a garbage collector is entitled to nearly $20 a day for garbage collection. The evidence showed that the helper received $5.50 for working from 4:30 a. m. to 4:30 p. m. The member worked, then, in making collections until 8 p. m., or about three and one-half hours more. Computing this three and one-half hours at double rate ($1.10 per hour), we find that the member would be entitled to $3.85 for the extra work, making a total of $9.35 per day. The Board allowed approximately that sum ($3,600 per year), and therefore we believe the finding to be supported by substantial evidence. The findings disclose no distinction in the character of the work performed by the helper and the member, except the extra work performed by the member, for which, under our view, the member received double rate of pay.

With respect to the remaining issue, arising under the Commissioner's petition for review, petitioner expended a sum of money in 1927 and a further sum in 1929, under circumstances substantially the same. The Board said: "* * * In each of those years ordinances were proposed for enactment which might reasonably be expected to injure greatly petitioner's business. The expenditures in question were for printing and distributing pamphlets, newspaper advertising, and the hire of speakers to argue advisability of the proposed changes in the law * * * It is true that the purpose of the expenditures was to avert the enactment of legislation unfavorable to petitioner and calculated to damage its business, but the means used, argument addressed to the public, were legitimate * * * We can see in these expenditures by petitioner merely the cost of legitimate efforts made to protect its property and business. Such cost is an ordinary and necessary expense of business * * *"

Under the statute above quoted, petitioner is entitled to make deductions of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Article 562 of Regulations 69, promulgated under the Revenue Act of 1926, and Article 262 of Regulations 74, promulgated under the Revenue Act of 1928, provide: "Sums of money expended for lobbying purposes, the promotion or defeat of legislation, the exploitation of propaganda, including advertising other than trade advertising, and contributions for campaign expenses, are not deductible from gross income." Article 562 of Regulations 65, promulgated under the Revenue Act of 1924, of Regulations 62, promulgated under the Revenue Act of 1921, and of Regulations 45, promulgated under the Revenue Act of 1918, have the same provision quoted.

The statute makes only two requirements to be met before expenses paid or incurred during the taxable year in carrying on any trade or business may be deducted. Such expenses must be (1) ordinary, and (2) necessary. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. In so far as the statute is concerned, the expenses under discussion could be deducted if they met the two requirements mentioned. However, the regulations limit the sweeping terms of the statute by prohibiting the deduction of: (1) Sums of money expended for (a) lobbying purposes, (b) or for the promotion or defeat of legislation, (c) or for the exploitation of propaganda, including advertising other than trade advertising; (2) contributions for campaign expenses. Since the Board specifically found that "the purpose of the

expenditures was to avert the enactment of legislation unfavorable to petitioner," it is clear that the expenditures fall within (1) (b), specified above, and possibly (1) (c), supra, and therefore such expenditures are not deductible under the regulation.

The statute does not attempt to determine what are "ordinary and necessary expenses." The regulation quoted above has determined, we think, that expenditures in the first class, and contributions in the second class, specified above, are not "ordinary and necessary expenses." The Act of Feb. 24, 1919 (40 Stat. 1057, 1066), Revenue Act of 1921 (42 Stat. 227, 254), and the Revenue Act of 1924 (43 Stat. 253, 283), each contained the provision quoted from the Revenue Act of 1926 in identical language. The regulation under each of the acts was identical. Under such circumstances the following, from Massachusetts Mutual Life Ins. Co. v. United States, 288 U.S. 269, 273, 53 S.Ct. 337, 339, 77 L. Ed. 739, is applicable: "This action [of Congress in re-enacting a statute] was taken with knowledge of the construction placed upon the section by the official charged with its administration. If the legislative body had considered the Treasury interpretation erroneous, it would have amended the section. Its failure so to do requires the conclusion that the regulation was not inconsistent with the intent of the statute (National Lead Co. v. United States, 252 U.S. 140, 146, 40 S.Ct. 237, 64 L.Ed. 496; Poe v. Seaborn, 282 U.S. 101, 116, 51 S.Ct. 58, 75 L.Ed. 239; McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 492, 51 S.Ct. 510, 75 L.Ed. 1183; Costanzo v. Tillinghast, 287 U.S. 341, 53 S.Ct. 152, 77 L.Ed. 350), unless, perhaps, the language of the act is unambiguous and the regulation clearly inconsistent with it." See, also, Williams v. Burnet, 61 App.D.C. 181, 59 F.(2d) 357; Simmons Co. v. Commissioner (C.C.A.1) 33 F.(2d) 75.

In the instant case, the statute is ambiguous because it makes no determination of what is or is not an "ordinary and necessary" expense. We believe the regulation to be controlling, and in the manner outlined.

This conclusion is in accord with Old Mission Portland Cement Co. v. Commissioner (C.C.A.9) 69 F.(2d) 676, affirmed on other issues, Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 55 S. Ct. 158, 79 L.Ed. 367.

Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505, cited by petitioner, does not deal with expenditures made to avert the passage of legislation, and therefore is not in point. Likewise, Lucas v. Wofford (C.C.A.5) 49 F.(2d) 1027, at page 1028, is not applicable because the expenditure was not made "to secure the passage or defeat of any legislation." In G. T. Wofford v. Commissioner, 15 B.T.A. 1225, and Los Angeles & Salt Lake Railroad Co. v. Commissioner, 18 B.T.A. 168, relied on by petitioner, the Board took the view, as it did in this case, that the expenditure must have been for some illegal purpose. In none of these cases is there anything to indicate that the Board considered the effect of the regulations quoted. To uphold the Board's decision would be equivalent to reading something into the regulation which cannot there be found.

We hold that petitioner is not exempt from taxation under the statute quoted; that there is substantial evidence to support the Board's finding that $3,600 is a reasonable sum to be allowed the members for salaries; and that the expenditures made by petitioner to avert the passage of unfavorable legislation may not be deducted.

Affirmed in part, and reversed in part.