## ROBERTS DAIRY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 14408.

United States Court of Appeals
Eighth Circuit.

April 15, 1952.

Rehearing Denied May 7, 1952.

Harry R. Henatsch, Omaha, Neb. (J. A. C. Kennedy, Yale C. Holland, G. L. De-Lacy, Ralph E. Svoboda, and Robert K. Adams, all of Omaha, Neb., on the brief), for petitioner.

Harry Marselli, Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., and Lee A. Jackson, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The question presented is whether the Tax Court erred in affirming a ruling of the Commissioner disallowing a deduction from gross income of the petitioner for the taxable year ending December 31, 1943, for a contribution of $750 made by the Petitioner to National Tax Equality Association, a corporation (referred to as NTEA).

The petitioner contended that its contribution was deductible under either § 23(a) (1) (A) or § 23(q) (2) of the Internal Revenue Code. The Tax Court held that the contribution was not deductible because the objectives of the NTEA were to carry on propaganda or otherwise influence legislation within the meaning of § 23(q) (2) of the Internal Revenue Code and the promotion or defeat of legislation or the exploitation of propaganda within the prohibition of Section 29.23(q)–1 of Treasury Regulation 111.[1]

---

1. Internal Revenue Code, 26 U.S.C. § 23 (a) (1) (A):

"§ 23. Deductions from gross income. "In computing net income there shall be allowed as deductions:

"(a) (As amended by § 121(a) of the Revenue Act of 1942, c. 619, 56 Stat. 798) Expenses.

"1. Trade or Business Expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

"§ 23 (As amended by Section 125 of the Revenue Act of 1942).

"(q) Charitable and other contributions by corporations. In the case of a corporation, contributions or gifts payment of which is made within the taxable year to or for the use of: * * *

"(2) A corporation * * * organized and operated exclusively for * * * scientific * * * or educational purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation * * *."

The case was submitted to the Tax Court upon a stipulation of facts supplemented by oral testimony and exhibits. The Tax Court filed findings of fact and an opinion and entered an order sustaining the deficiency found by the Commissioner.

The petitioner, a Nebraska corporation with its principal place of business at the city of Omaha, is engaged in the dairy business. It does not produce its own milk but purchases it from producers. It does a bottling, manufacturing and distribution business. It has plants at Sioux City, Iowa, and at Lincoln, Omaha, and Waterloo, Nebraska.

In the years immediately prior to and including 1943 the petitioner was faced with severe competition from dairies functioning in a cooperative type of business organization. It had difficulty in retaining its suppliers and customers because of the advantages offered them by the cooperatives. These advantages were made possible by reason of the stronger financial position of the cooperatives compared with petitioner, brought about to a large degree by the tax-exempt status of cooperatives under § 101 (12) and (13) of the Internal Revenue Code, 26 U.S.C. § 101(12, 13).

To meet the competition of the cooperatives the petitioner had the alternatives of changing its form of doing business to that of a cooperative type of organization; of placing before its customers, suppliers and interested persons, facts and statistics showing the tax advantage enjoyed by cooperatives and thereby being better able to explain its position; or, of ultimately realizing a tax status equal to that of the cooperatives.

The court further found that to obtain aid from the services proposed by NTEA in meeting these problems, petitioner contributed thereto $750 in October, 1943, and subsequently received bulletins, research publications and other literature distributed by NTEA.

NTEA was incorporated under the laws of Illinois October 11, 1943. It is a non-profit organization supported by contributions entitling the contributor to membership for one year. Its articles of incorporation provide that the objects and purposes for which it was organized are:

"* * * to conduct educational, scientific and research activities relative to disparities in federal and state tax statutes and other laws and regulations affecting business, and to disseminate such information to civic organizations and representatives of business affected thereby to the public and to federal and state governments. The Corporation shall be non-sectarian, non-partisan, and no part of the net earnings if any, of the Corporation shall inure to the benefit of any private shareholder or individual."

The first regular meeting of the incorporators was held November 18, 1943, at which time the board of directors was elected.

The corporation operated under the charter granted in October, 1943, until 1949, when the charter was amended to permit the urging of the elimination of tax disparities. While operating under the 1943 charter, bulletins and literature distributed were directed toward informing its members and the public of the tax disparities between private and cooperative business organizations. The bulletins were made available for further distribution by its members and suggestions were made on attached order blanks.

NTEA did not engage in lobbying activities, had no congressmen on its mailing list and did not request to appear before congressional committees considering changes in tax statutes. On request, however, officials of NTEA did appear before the Ways and Means Committee of the House of Representatives in 1947.

Treasury Regulation 111, § 29.23(q)–1. Contributions or Gifts by Corporations. "* * * Sums of money expended for lobbying purposes, the promotion or defeat of legislation, the exploitation of propaganda, including advertising other than trade advertising, and contributions for campaign expenses are not deductible from gross income."

On November 19, 1943, a bill was introduced in the House of Representatives which, on February 25, 1944, was enacted as the Revenue Act of 1943. Section 117 of the Act, 26 U.S.C.A. § 54, required organizations exempt from tax to file information returns. Publicity of NTEA gave itself credit for the inclusion of this section in the bill as a result of its fact finding and publicity having been successfully presented by its members to Congress.

NTEA was organized and primarily operated from its inception for carrying on propaganda, the ultimate objective being a revision in the tax structure.

Many of the bulletins issued by NTEA during the years between 1943 and 1949 were introduced in evidence by the Commissioner. One of these bulletins discussing the Association said among other things its purpose would be "Furnishing factual information on tax matters to individuals who are called upon to testify before committees and other agencies" * * * and "when necessary, furnish counselors to represent the Association and its membership before state legislatures and other state, county and municipal bodies wherever tax, legislative and public educational problems arise, affecting the welfare of the members of the Association."

All of these exhibits showed the tax advantages of the cooperatives over their competitors.

The petitioner earnestly contends that the Tax Court seriously erred in basing its conclusion in part upon the activities of NTEA in years subsequent to 1943 and prior to 1949. On this point the court in its opinion said:

"Petitioner has failed to show wherein the purpose of the organization of NTEA was any different or that its activities or type of information disseminated was any different in 1943 than in later years of operating under the same charter prior to 1949. This being the case, it appears to us that all of its activities adhered to the object of its organization and that the type of information disseminated in later years, which is in evidence, was the type intended upon its incorporation."

The record abundantly supports this finding and conclusion of the Tax Court. The purpose of the organization expressed in its charter was to " * * * conduct * * * research activities relative to disparities in federal and state tax statutes and other laws and regulations affecting business, and * * * to disseminate such information to civic organizations and representatives of business affected thereby, to the public and to federal and state governments."

The record shows that NTEA did the work it was organized to do, and did it thoroughly from its beginning in 1943 until it amended its charter in 1949 to enable it to perform directly and officially the part of the work it had, prior to 1949, left to its members to perform, that was to persuade congress and legislatures to remove the "disparities in federal and state tax statutes favorable to cooperative and unfavorable to their competitors."

Clearly the Tax Court did not err in holding that the contribution here involved was not deductible within the meaning of § 23(q) (2) of the Internal Revenue Code and § 29.23(q)–1 of Treasury Regulation 111.

The decision of the Tax Court is affirmed.