William B. **CAMMARANO** and Louise
Cammarano, His Wife, Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 15350.

United States Court of Appeals
Ninth Circuit.

July 8, 1957.

Rehearing Denied Oct. 15, 1957.

Jones & Grey, A. R. Kehoe and Har-
grave A. Garrison, Seattle, Wash., At-
hearn, Chandler & Hoffman, Walter Hoff-
man, and Clark W. Maser, San Francisco,
Cal., for appellants.

Charles K. Rice, Asst. Atty. Gen., Hil-
bert P. Zarky, Earl Schmeidler and Ellis
N. Slack, Attys., Dept. of Justice, Wash-
ington, D. C., Charles P. Moriarty, U. S.
Atty., Seattle, Wash., and Guy A. B.
Dovell, Asst. U. S. Atty., Tacoma, Wash.,
for appellee.

Before ORR, POPE and FEE, Circuit
Judges.

ORR, Circuit Judge.

Appellants, partners in a wholesale
beer distributing concern in Tacoma,
Washington, made a contribution to the
Washington Beer Wholesalers Associa-
tion, Inc., Trust Fund. The Trust Fund
had been established December 17, 1947,
to carry on an extensive state-wide pub-
licity program, directed by an Industry
Advisory Committee, on behalf of whole-
sale and retail beer and wine dealers to
defeat proposed initiative legislation in
the State of Washington. The measure,
if enacted into law, would have placed
the retail sale of wine and beer exclu-
sively in state owned and operated
stores.[1]

---

1. The ballot title of the Initiative provided:
   "An Act prohibiting the retail sale of
   beer and wine by any person other than
   the State of Washington, repealing all
   provisions of existing law pertaining to
   licensing of retail sale of beer and wine,

The Association assessed its members amounts based upon their volume of business. The funds received from the contributions, appellants' contribution included, were used in an effort to defeat the initiative legislation.

On their income tax returns appellants claimed a deduction for the contribution made as an ordinary and necessary business expense within the meaning of § 23(a) (1) (A), Internal Revenue Code of 1939.[2] The Commissioner of Internal Revenue disallowed this deduction on the ground that the contribution was used for lobbying purposes and the promotion or defeat of legislation, and therefore within the prohibition contained in Treasury Regulations 111, § 29.23(o)–1, in force and effect at the time the payment was made. Following payment of the assessed deficiency and a claim for refund, this suit for refund followed.

The regulation reads:

"Sec. 29.23(o)–1. *Contributions or Gifts by Individuals.*—

\* \* \* \* \* \*

"Sums of money expended for lobbying purposes, the promotion or defeat of legislation, the exploitation of propaganda, including advertising other than trade advertising, and contributions for campaign expenses, are not deductible from gross income. \* \* \* "

The field encompassing the force and effect of the lobbying regulation set out above has often been plowed; but there exists no straight furrow which leads unerringly to the proper solution of all cases. The regulation has quite often been held to preclude deductions made for moneys spent to defeat legislation.[3] Of course, the particular facts of each case govern.

■ Unquestionably the regulation is broad enough to exclude deductions for any and all sums spent for lobbying and the promotion or defeat of legislation, and the Government insists that the courts have sustained the validity of the regulation in that broad sense. The case of Textile Mills Securities Corp. v. Commissioner, 1941, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249, is relied on by the Government.[4] It is argued by appellants, with some force, that Textile Mills, as an authority, should be restricted to the facts of that particular case, and that the ban against deductions of amounts spent for lobbying as ordinary and necessary expenses is valid only where they arise "from that family of contracts to which the law has given no sanction." 314 U.S. at page 339, 62 S. Ct. at page 280. However, other language in Textile Mills characterizes the

revoking existing licenses and providing penalties."

2. Sec. 23. Deductions from Gross Income "In computing net income there shall be allowed as deductions:
"(a) *Expenses.*
"(1) *Trade or Business Expenses.*
"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, \* \* \*." 26 U.S.C.A. § 23(a) (1) (A).

3. See Textile Mills Securities Corp. v. Commissioner, 1941, 314 U.S. 326, 62 S. Ct. 272, 86 L.Ed. 249; Sunset Scavenger Co. v. Commissioner, 9 Cir., 1936, 84 F. 2d 453; Revere Racing Ass'n v. Scanlon, 1 Cir., 1956, 232 F.2d 816; American Hardware & Eq. Co. v. Commissioner, 4 Cir., 1953, 202 F.2d 126, certiorari denied 1953, 346 U.S. 814, 74 S.Ct. 25, 98

L.Ed. 342; Roberts Dairy Co. v. Commissioner, 8 Cir., 1952, 195 F.2d 948, certiorari denied 1952, 344 U.S. 865, 73 S. Ct. 107, 97 L.Ed. 671.

4. In Textile Mills, the Supreme Court held that the expenses of lobbying and propaganda, paid by a corporation employed by certain German textile interests to secure legislation from Congress authorizing the recovery of German properties seized during the First World War, were not deductible. The Court there related the lobbying regulation to ordinary and necessary business expenses, and rejected the contention that the limitation was not applicable to such expenses because it was included as a regulation under § 23(n), Internal Revenue Code of 1939, but was not specifically included as a regulation under § 23(a) of the Act.

words "ordinary and necessary" as used in the statute, as not being "so clear and unambiguous in their meaning and application as to leave no room for an interpretative regulation." 314 U.S. at page 338, 62 S.Ct. at page 279. We think it may reasonably be gathered from a reading of Textile Mills that the Commissioner, in segregating sums paid for lobbying as non-deductible as ordinary and necessary business expenses, acted within the proper exercise of his rule-making power.

This court in the case of Sunset Scavenger Co. v. Commissioner, 9 Cir., 1936, 84 F.2d 455, decided prior to Textile Mills, held that an association of Scavengers in San Francisco could not deduct expenses incurred in combatting an ordinance which would have seriously affected their business. In its decision this court relied on the doctrine of statutory re-enactment in the face of a known administrative interpretation to sustain the lobbying regulation, as well as the latent ambiguity of the phrase, "ordinary and necessary business expenses."

In American Hardware v. Commissioner, 4 Cir., 1953, 202 F.2d 126, certiorari denied, 1953, 346 U.S. 814, 74 S.Ct. 25, 98 L.Ed. 342, the regulation was applied to disallow deductions for payments by a hardware company to the National Tax Equality Association, which issued propaganda on the subject of tax revision. The court there held that Textile Mills controlled, rejecting contentions that Textile Mills was limited to the non-deductibility of items which are against public policy or are morally wrong, and that the lobbying regulation was inapplicable to ordinary business expenses since not specifically appended to § 23(a).

In Revere Racing Association v. Scanlon, 1 Cir., 1956, 232 F.2d 816, the regulation was again applied to disallow payments by a dog racing company for the defeat of a public referendum on the question of whether pari-mutuel system of betting at dog races would be continued in the county. There, the court rejected the contention that the regulation was inapplicable where the measure was before the people upon referendum, rather than before a legislature.

Appellants cite Commissioner of Internal Revenue v. Heininger, 1943, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171, and Lilly v. Commissioner, 1952, 343 U.S. 90, 72 S.Ct. 497, 96 L.Ed. 769, both decided subsequent to Textile Mills, as limiting the scope of Textile Mills to payments violating public policy.

In Commissioner of Internal Revenue v. Heininger, a mail order dentist was allowed a deduction as ordinary and necessary business expenses for legal fees incurred in an unsuccessful contest of a fraud charge lodged by the Postmaster. In Lilly v. Commissioner, an optician was allowed business expense deductions for kick-backs to a prescribing physician, where the practice was customary.

Those cases are distinguishable in that the regulation here involved was not applicable; there was no lobbying involved. In Lilly v. Commissioner, the Supreme Court expressly distinguishes Textile Mills on the ground that in the earlier case an interpretative regulation had been in effect for many years with Congressional acquiescence. 343 U.S. at page 95, 72 S.Ct. at page 500.

■■ This court in Sunset Scavenger Co. v. Commissioner, 9 Cir., 1936, 84 F.2d 453, held that the doctrine of statutory re-enactment in the face of a known administrative interpretation applied in that case. We think that doctrine can be said to apply with equal force in the instant case.[5] What we have

---

5. The lobbying regulation assumed its present form in Article 562 of Treasury Regulations 45 (1919 ed.), promulgated under the Revenue Act of 1918, and has since appeared without change, in all successive Regulations. See Article 562 of Treasury Regulations 45 (1920 ed.), 62, 65 and 69, promulgated under the Revenue Acts of 1918, 1921, 1924, and 1926, Article 262 of Treasury Regulations 74 and 77 (1929 and 1937 eds.), promulgated under the Revenue Acts of 1928 and 1932,

said sustains an affirmance of the judgment, but there is also another reason which also requires an affirmance. The trial court found that:

"9. There was testimony to the effect that the Initiative, if passed, would have affected the wholesale business of Cammarano Brothers. However, the way in which the measure, aimed as it was at retail sales of wine and beer, would have affected the wholesale distribution of beer was not made clear. In any event, the measure was defeated."

This is a finding that appellants failed to sustain their burden of establishing by a preponderance of the evidence that the passage of the initiative would have impaired its business as a beer distributor.

Judgment affirmed.

Article 23(o)–2 of Treasury Regulations 86, promulgated under the Revenue Act of 1934, Article 23(q)–1 of Treasury Regulations 94, promulgated under the Revenue Act of 1936, Article 23(o)– of Treasury Regulations 101, promulgated under the Revenue Act of 1938, Sections 19.23(o)–1, 29.32(o)–1, and 39.23(o)–1 of Treasury Regulations 103, 111, and 118, respectively, promulgated under the Internal Revenue Code of 1939, and Section 1.162–15 of the proposed Income Tax Regulations under the Internal Revenue Code of 1954.