## A. DAVID CO. v. GRISSOM, Collector of Internal Revenue.

### No. 3430.

Circuit Court of Appeals, Fourth Circuit.

April 4, 1933.

H. Edmund Rodgers, of Wilmington, N. C. (Rodgers & Rodgers, of Wilmington, N. C., on the brief), for appellant.

Frederick W. Dewart, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (W. H. Fisher, U. S. Atty., of Wilmington, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The A. David Company, a North Carolina corporation, the taxpayer in this case, brought suit against the collector of internal revenue for the district of North Carolina complaining of an excessive assessment of income and profit taxes for the fiscal years ending on July 31st in 1918 to 1921, inclusive. Three questions were submitted to the District Judge upon stipulations setting out the facts and waiving a jury trial. They relate to (1) the computation of invested capital of the corporation; (2) the salaries of officers of the corporation; (3) the admitted overpayment of taxes in the amount of $552.34 for the year 1918 which the collector, relying on statutes of limitation, refused to refund. All of these questions were decided adversely to the taxpayer, and its contentions on this appeal are that the findings of fact were not supported by substantial evidence and the conclusions of law based thereon were not sound.

The A. David Company was incorporated in 1899, succeeding a partnership previously conducted by the partners. During the period from 1915 to 1921, to which the evidence in the case relates, a large majority of the stock was owned by two stockhold-

ers, E. E. David and L. Stein. On July 31, 1915, the books of account of the corporation contained open individual accounts in the names of these two stockholders, in which they were credited with the earnings of the corporation in proportion to their respective stockholdings, and with the amounts payable to them in salaries, interest, and dividends, and were charged with all withdrawals. On the date mentioned, after certain closing entries for the fiscal year had been made, the credit balances to these accounts were: E. E. David, $19,665.98, and L. Stein, $16,851.09. The accounts were then closed and balanced off by debiting them with like sums, which were credited to new ledger accounts opened on the same date as follows: Bills payable account to E. E. David, $19,665.98; bills payable account to L. Stein, $16,851.09; and these balances, in the new accounts, were then reduced by sundry amounts, representing previous withdrawals by the individuals, so that the credits were reduced to the sums of $18,856.77 and $13,420.38, respectively.

These credit balances, aggregating the sum of $32,277.15, constitute the principal factor in this case in so far as invested capital is concerned. The taxpayer maintains that this sum represents earned surplus which should be included in the computation of invested capital within the meaning of section 326 (a) (3) of the Revenue Act of 1918, 40 Stat. 1057, 1092, and the like section of the Revenue Act of 1921, 42 Stat. 227, 274. The government contends, on the other hand, that the balance represents borrowed money which must be excluded from the invested capital under the provisions of section 326 (b) of the statute. In order to settle this controversy, it is necessary to take into consideration the circumstances under which the entries were made and the business was being conducted, for, as pointed out in article 813 of Regulations 45 under the Revenue Act of 1918 hereinafter set out, the question is largely one of fact:

"Article 813. Borrowed Capital: Amounts left in business. Whether a given amount paid into or left in the business of a corporation constitutes borrowed capital or paid-in surplus is largely a question of fact. Thus, indebtedness to stockholders actually cancelled and left in the business would ordinarily constitute paid-in surplus, while amounts left in the business representing salaries of officers in excess of their actual withdrawals, or deposit accounts in favor of partners in a partnership succeeded by the corporation, will be considered paid-in surplus or borrowed capital according to the facts of the particular case. The general principle is that if interest is paid or is to be paid, on any such amount, or if the stockholder's or officer's right to repayment of such amount ranks with or before that of the general creditors, the amount so left with the corporation must be considered as borrowed capital and be so treated in computing invested capital."

See, also, article 813 of Regulations 82 of the Revenue Act of 1921.

After the closing entries to which we have referred were made, new individual ledger accounts were opened on the books in identically the same manner as the original accounts, and in them the individuals were credited with interest, salaries, earnings and dividends, and charged with all withdrawals; the credit balance at the close of each year representing the amount left in the business. The new bills payable accounts to E. E. David and L. Stein, showing the balances above set out, remained undisturbed from July 31, 1915, until July 31, 1920, when the entries were offset by debiting items of equal amounts, and the individuals, E. E. David and L. Stein, were given credit for the same amounts, and these credit entries were then posted in new accounts in their names on a new ledger. These latter accounts were distinguished from the open accounts last mentioned by the fact that no debit or credit postings were made in them from July 31, 1920, to July 31, 1924.

In addition to what has thus been stated, there were two sets of entries on the books which give substantial foundation to the claim of the government that the amounts in question represented borrowed money rather than surplus assets of the corporation. Appended to the entry on the books under date of July 31, 1915, when the individuals were credited with the aggregate sum of $35,517.07, was a notation indicating that the amount was covered by notes of July 10, 1914. In the next place, the individual accounts of David and Stein were credited at the end of each fiscal year from 1916 to 1921 with amounts shown as interest, calculated at the rate of 6 per cent. per annum on the balances to the credit of the individuals of $18,856.77 and $13,420.38 respectively; and each of the individuals for the years 1917 to 1921, inclusive, reported these interest items in his income tax return.

On the other hand, the taxpayer points out that, prior to 1921, the books of the com-

pany contained no specific surplus accounts, and the contention is that the aggregate amount credited to David and Stein in the accounts maintained in their names during the period in question, separate and apart from their active drawing accounts, really represented an account of the surplus assets of the corporation set out in a somewhat irregular, but nevertheless easily understandable, fashion. Emphasis is placed upon the fact that it was the policy of the controlling stockholders to allow the earnings to remain in the business. Salaries were kept at a nominal figure until 1918, and only six dividends were declared and paid between 1899 and 1922; one of $3,000 in 1900 and five annual dividends of 6 or 7 per cent. from 1915 to 1919 inclusive. The funds thus remaining were invested at the risk of the business, and were represented by inventories, cash, accounts receivable, land, and buildings, and other similar assets, and there were no general creditors. The minutes of the meetings of directors and stockholders did not refer to any notes or the borrowing of money in any way, and there was oral testimony tending to show that neither the stockholders nor the directors at any time authorized the borrowing of moneys or the issuance of new notes, and that no notes were ever issued for any amount.

The taxpayer relies particularly upon Eaton v. English & Mersick Co. (C. C. A.) 7 F.(2d) 54, where it was held in the case of a corporation which had succeeded to the business of a partnership whose members became stockholders in the corporation that a resolution providing that net profits for the preceding year be divided among the stockholders and credited to their individual accounts in proportion to their stockholdings would not constitute a dividend, since there was no provision for payment at a particular time, and no intent to declare a dividend; and hence it was determined that the net profits covered by these entries constituted invested capital and not borrowed money within the meaning of the acts. We do not question this ruling under the facts disclosed, but we think that the evidence in the pending case, relating to the issuance of notes and the payment of interest thereon by the corporation to the individual stockholders, justified the inference that it was the intent of the directors and the controlling stockholders to withdraw the surplus funds from the ownership of the corporation and take title to them in their individual right. No formal dividend was declared, but there were no creditors, and it lay well within the power of the

directors to declare such a dividend if they saw fit; and the corporation, having dealt with the funds as a borrower, by indicating that it had issued its notes therefor, and by paying interest thereon, has no cause to complain when the taxing authorities, overlooking the lack of corporate formalities, treat the funds in the same manner as capital borrowed by the corporation from its individual stockholders.

The question of the deduction allowed to the taxpayer for salaries paid to the officers does not require extended discussion. It relates to the years ending in 1919 and 1920 for which the taxpayer claimed a deduction of $12,000 as salaries to each of two officers in place of an allowance of $7,000 made by the Commissioner. It is significant that the salaries paid by the corporation prior to 1918 did not exceed $150 per month, and that they were increased to $1,000 a month in that year. Extravagant amounts may not be paid by a corporation to its officers in the form of compensation for services, and deducted from income as ordinary and necessary expenses, when they bear no substantial relation to the services rendered; and the burden is upon the taxpayer to show that the amount disallowed by the Commissioner was in fact part of its ordinary and necessary expenses. Botany Worsted Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379. The record in the pending case does not disclose any circumstances from which we may conclude that the amount allowed by the Commissioner was unreasonable, and, the taxpayer having failed to meet the burden imposed upon it under the law, there was no error in the conclusion of the District Court on this point.

The complaint of the taxpayer in the District Court, with regard to the third question, alleges in substance that on March 23, 1925, the Commissioner determined that for the fiscal year ending July 31, 1918, a profit tax of $375 should be assessed, thereby indicating an overassessment of $617.44, of which $64.88 was certified for refund and was actually refunded; but the return of the balance of $552.34 was refused on the ground that it was outlawed. The answer of the respondent admitted that the figures contained in this part of the complaint were in accordance with the records of the department. The record in this case, however, is entirely devoid of any facts indicating that the taxpayer has complied with the provisions of the statutes which require that a claim for refund is necessary before a suit therefor can

be filed, and that such claim shall be presented to the Commissioner within a specified time. See R. S. § 3226, 26 U. S. C. § 156 (26 USCA § 156); R. S. § 3228, 26 U. S. C. § 157 (26 USCA § 157); 26 U. S. C. § 1065 (26 USCA § 1065); Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 72 L. Ed. 253; United States v. Felt & Tarrant Mfg. Co., 283 U. S. 269, 51 S. Ct. 376, 75 L. Ed. 1025. No error, therefore, appears in the action of the District Court in denying this portion of the taxpayer's claim.

The judgment of the District Court is affirmed.