HENDRICKSON v. UNITED STATES.

No. 45886.

Court of Claims.
March 5, 1945.

Geo. E. H. Goodner, of Washington, D. C. (Scott P. Crampton, of Washington, D. C., on the brief), for appellant.

Elizabeth B. Davies, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

Plaintiff sues to recover income taxes resulting from the inclusion within her gross income of $3,575.16, refunds of processing taxes which had been collected from Galbreath's Bakery by the flour mills from which it had purchased flour in 1935.

After the Agricultural Adjustment Act had been declared unconstitutional, under which Act these processing taxes had been levied, the flour mills refunded to "Galbreath's Bakery" the amount of the taxes which they had included in the price of the flour sold to that bakery. This sum was received by plaintiff in 1937 in the way to be set out and was included by her in her income for that year, on which taxes were paid, but later she filed a claim for refund of these taxes on the ground that these refunds were not income to her in that year or in any other year.

In the year 1935, when the mills sold the flour to Galbreath's Bakery, in the purchase price of which there was included the processing taxes, the bakery was operated by a partnership composed of Hugh J. Galbreath, the former husband of plaintiff, and W. C. Thomas. On June 11, 1936, Galbreath died leaving no will. Under the law of Tennessee, where he resided, one-half of his estate passed to his widow and one-half to his minor daughter. He owned a three-fourths interest in the bakery, so on his death plaintiff and his daughter each succeeded to a three-eighths interest therein. Subsequently, on October 2, 1936, plaintiff bought from her daughter her interest in the bakery for the sum of $14,667.20, which was the book value of the daughter's interest, and then on November 30, 1936, plaintiff purchased Thomas' one-fourth interest. Thereafter, plaintiff was the sole owner.

When the flour mills made the refunds of processing taxes collected by them from Galbreath's Bakery checks were issued by them in the name of Galbreath's Bakery. These checks were cashed by plaintiff and she has ever since retained the proceeds thereof.

When the mills made the refunds to the bakery they were making them to the persons from whom they had collected the processing taxes, to wit, the partnership of Galbreath and Thomas. When they were received by plaintiff she had a right to keep them only because she was an heir of her husband, one of the partners to whom the refunds were made, and because she was the purchaser of the interest in the business of her daughter and of Thomas. The mills owed nothing to anyone other than the partnership. They owed plaintiff nothing except as the successor in interest of the partners.

Three-eighths of the refunds received by her, then, she received by inheritance from her husband. Such receipts are expressly excluded by the Act from gross income. The inclusion in her gross income of so much of the refunds, at least, was wholly without justification.

The other five-eighths of the refunds plaintiff had a right to retain only by virtue of her purchase of her daughter's interest in the business and of Thomas' interest. She had no other right to it.

We think there can be no doubt that when plaintiff's daughter and Thomas sold to plaintiff their interests in the business they sold to her whatever right they had to receive a part of these refunds. The terms of their sales made no reservation of any asset of the business. Their entire interest was sold. This is evidenced by the fact that neither the daughter nor Thomas ever made any claim to any part of the refunds, or if they did, that they were unable to successfully maintain it.

Whether or not the partnership of Galbreath and Thomas had a legally enforceable right to a refund of the money from the flour mills, it nevertheless became, when paid, an asset of that partnership, and only those persons were entitled to keep the money who had succeeded to the interest of the partners. This person was the plaintiff, partly by inheritance from her husband and partly by purchase from her daughter and from Thomas.

We are of opinion that plaintiff is entitled to recover the amount of taxes paid as the result of the inclusion of these refunds within her gross income. Judgment is reserved until the filing of a stipulation by the parties, or, in the absence of a stipulation, until the incoming of a report of a commissioner, showing the amount due plaintiff computed in conformity with this opinion. It is so ordered.

WHALEY, Chief Justice, and LITTLETON, Judge, concur.

MADDEN, Judge (dissenting).

The original owners of the bakery, Hugh J. Galbreath and Thomas, paid to the mill-

ers, their vendors, processing taxes upon the flour which they bought in 1935; they, so far as appears, collected the amount so paid from their customers in increased prices;[1] in 1936 the plaintiff became the owner of the bakery; in 1937 the millers sent payments to Galbreath's Bakery, which was the trade name of the enterprise throughout the entire period; the plaintiff appropriated the money. The question is whether or not it was taxable income to her. I think it was.

The statutory definition of taxable income consists of a "general definition"[2] of gross income, a list of specific exclusions from gross income,[3] and a list of permissible deductions from gross income in computing the tax.[4] The "general definition," shown in the footnote, is very broad, using the words "and income derived from any source whatever." This language easily includes the money here in question. When we look to the "Exclusions from Gross Income" in section 22(b), paragraph (3) excluding "the value of property acquired by gift, bequest, devise or inheritance" is the only provision with possible relevance. The plaintiff does not claim that any right to this money came to her by inheritance from her husband. She concedes that there was no contract for it or right to collect it in her husband and his partner. She does claim, however, that the money came to her by "gift" from the millers and is therefore excluded from taxable income by section 22 (b) (3).

The plaintiff was a legal stranger to the millers, as far as the purchases of the flour on which the processing taxes were paid, were concerned. She just happened to own the same physical plant and business which her husband and Thomas had owned when they bought and used the flour. If they had had a legal right to a refund of the taxes, that right might have, probably would have, passed to the plaintiff by the inheritance and the assignments by which the business became hers. But the mere chance or prospect that, at the will of the millers, the taxes would be refunded, would not have passed to her by inheritance, nor by assignment in the absence of an intent to include such a chance or prospect. The evidence here negatives any such intent. So the plaintiff acquired by succession or assignment no interest in these refunds of taxes, and was, as I have said, a legal stranger to them. See Hendrickson v. Commissioner, supra. The plaintiff in her reply brief concedes this.

The millers, I suppose, intended to pay the taxes back to the persons from whom they had collected them. It would be remarkable if their only anxiety was to disgorge them, without regard to the question of who received them. If their intent was as I have supposed, they sent the money to "Galbreath's Bakery" upon the assumption that its owners, corporate or personal, were the ones who had paid them the money which they were now refunding. They could hardly have supposed that they could escape liability for the unjust enrichment tax themselves merely by donating to charity or to a stranger the amount of the processing taxes which they had collected from Hugh J. Galbreath and Thomas.

But when the payments arrived, addressed to "Galbreath's Bakery", the plaintiff was the one to whom they were delivered, since her business bore that name. She took the payments and appropriated them. So far as appears, she did not question the millers as to whether the payments were meant for her, or had merely come into her hands because of their erroneous assumption that "Galbreath's Bakery" was still owned by the person or persons who had paid the taxes. If my supposition as to what happened is correct, the plaintiff was not the recipient of a "gift." If the transaction was intended by the millers as

[1] See Hendrickson v. Commissioner, 4 T.C. 231, at pages 236, 237.

[2] Revenue Act of 1936, Section 22, 26 U.S.C.A.Int.Rev.Acts, page 825. Gross Income.

"(a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit; or gains or profits and income derived from any source whatever. * * * *"

[3] Id. Section 22(b) (1–8).

[4] Id. Section 23, 26 U.S.C.A. Int.Rev. Acts, page 827.

a gift to anyone, or if it would properly be classified as a gift if it had been received by the person intended, it still would not be a gift to the plaintiff, for whom it was not intended. If one sends a check for a Christmas present to his friend John Smith at a stated address, but the friend has died and another John Smith lives at the address and he receives and cashes the check, he cannot, we suppose, omit it from his income tax return as a gift. It was intended as a gift, but not to the one who got it. As to him, it is "income derived from any source whatever", and nothing elsewhere in the statutes excludes it from taxability. I think, therefore, that the plaintiff came into this money because her enterprise happened to bear the same name as it bore when the former owners who had paid the taxes to the millers operated it. If so, it was taxable income to her.

If the intention of the millers was not what I have inferred; if they wished only to pay out the money, without regard to who got it; or if they were intending to buy the good will of the present owner of the business at an 80% discount, rather than to restore the money to the persons from whom they had collected it, or their representatives, who would have included the heirs of Thomas and the minor daughter of Hugh J. Galbreath; the plaintiff should have come forward with evidence of such intentions. If the intention to purchase good will for the future had been shown, we would have had an interesting question as to whether the transaction was a gift, excluded from taxation. According to Sportwear Hosiery Mills v. Commissioner, 3 Cir., 129 F.2d 376, it would not have been a gift, and would have been taxable. But perhaps the decision in Helvering v. American Dental Company, 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785, points the other way. The court has not, as I understand it, considered this question, since we have no evidence as to what the millers' actual intent was. In this discussion, I have been obliged to infer their intent from the somewhat meager facts and circumstances proved.

The court's opinion awards the plaintiff a judgment upon a theory which the plaintiff herself expressly disclaims in her reply brief. I think the decision is wrong.

JONES, Judge, took no part in the decision of this case.