**In re Manley Stephen RANEY and Minervia Louise Raney, Debtors.**

**Bankruptcy No. 90–00389–C.**

United States Bankruptcy Court, D. Wyoming.

March 25, 1991.

Georg Jensen, Cheyenne, Wyo., for movant.

Karen Lynne Baker, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

## DECISION

HAROLD L. MAI, Bankruptcy Judge.

THIS MATTER came before the court for hearing on the debtors' Objection to the Claim of the IRS and Request for Determination of Tax Liability. The facts in this matter are undisputed.

### Findings of Fact

1. On May 11, 1970, Clive and Ruth Stoelk sold the 4 Winds Motel in Douglas, Wyoming, to Sidney and JoAnn Ainslee by an Agreement for Warranty Deed. The First National Bank at Douglas acted as the escrow agent. On May 27, 1971, the Stoelks sold the 4 Winds Motel to Howard and Elenora Rice. On October 24, 1973, the Rices sold the 4 Winds Motel to Manley S. Raney and Minerva L. Raney, the debtors herein.

2. On March 1, 1978, the Raneys signed an Agreement for Warranty Deed with Don and Beverly Lindberg. The First National Bank at Douglas again was escrow agent. The Agreement provided that the Lindbergs were to make their payments of $2,167 directly to the Bank. The Bank would then pay $783 of that payment directly to the Stoelk–Ainslee escrow.

3. On May 30, 1978, the escrow instructions were amended to provide that $850 of the Lindberg payment would be made to the Stoelk–Ainslee escrow.

4. On February 6, 1979, Mr. and Mrs. Raney filed 1040 returns for the 1974, 1975, and 1976 tax years. The IRS audited those returns.

5. On January 4, 1980, the IRS made assessments of income taxes, penalties, and interest against the Raneys in the total amount of $50,362.38 for the 1974, 1975, and 1976 tax years. On January 4, 1980, the IRS filed Notices of Federal Tax Lien against the Raneys in Converse County and Platte County, Wyoming.

6. In November of 1980, the IRS served a Notice of Levy of the Raneys' interest upon the Bank.

7. Shortly thereafter, in December of 1980, Mrs. Raney notified the Bank that they were transferring their interest in the escrow account to an entity known as Silver Bend Company. On October 27, 1981, the IRS served upon the Bank a Notice of Levy of Mr. Raney's interest in the escrow account.

8. On May 11, 1982, the IRS served upon the Lindbergs, a Notice of Levies of the Raneys' interest in the property.

9. On April 26, 1982, the First National Bank of Douglas filed an interpleader action. On July 30, 1982, the Lindbergs filed an interpleader action. Both interpleader actions were removed to the Federal District Court where they were consolidated.

10. On February 25, 1983, the District Court entered its Findings of Facts and Conclusions of Law and Judgment in the consolidated interpleader actions. The Judgment ordered that the Lindbergs' monthly payments were to be paid directly to the Clerk of the United States District Court. From these future monthly payments to be made by the Lindbergs, the Clerk of Court was to pay $850 to the Stoelks until their claim was satisfied in full. The balance of the monthly payments were to be paid to the IRS until the Raneys' tax liabilities for the years 1974, 1975, and 1976 were satisfied.

11. All of the money the IRS received pursuant to the February 25, 1983 Judgment was applied to the Raneys' 1974, 1975, and 1976 tax liabilities.

12. In 1984, the Raneys filed their 1040 returns for the years 1980 through 1983. The IRS audited the Raneys' 1980, 1981, 1982, and 1983 tax returns.

13. In early 1987, the Raneys attended a meeting in an IRS office located in Phoenix, Arizona. According to Mr. Raney, the purpose of the meeting was for the Raneys to learn how to file returns that were acceptable to the IRS. At that meeting, Mr. Raney discovered that the Stoelks had been overpaid. Mr. Raney informed the IRS officer about the overpayment. Apparently the Clerk of Court had continued to send an $850 per month payment to the Stoelks after they had been paid in full in approximately December of 1984. If not for the overpayment to the Stoelks, that money would have been applied to the Raneys' tax debt.

14. On March 25, 1987, shortly after Mr. Raney brought the overpayment to the attention of the IRS, the District Court entered an Order directing the Stoelks, the Lindbergs, and the IRS to submit an accounting of payments pursuant to the February 23, 1983 Judgment. That order provided:

It appearing to the Court that payments on the accounts of Clive Stoelk and Ruth Stoelk and the United States Internal Revenue Service are nearing the end of the payment period, and in the interests of aiding the Court in its disbursement responsibilities;

NOW, THEREFORE, IT IS

ORDERED that the parties in this matter receiving disbursements from the Clerk of the United States District Court for the District of Wyoming, shall submit to the Court within thirty (30) days from the date of this Order, a recapitulation of their respective accounts; it is

FURTHER ORDERED that based on concerns of some parties, the Clerk be, and he is hereby directed to withhold any disbursement to Clive and Ruth Stoelk until said account is received by the Court and it is determined that the Stoelks are entitled to future disbursements; * * *

15. On April 6, 1987, the Lindbergs filed their accounting. On May 1, 1987, the IRS filed its accounting showing that the Raneys' 1974 and 1975 taxes were fully paid, but showing that they still owed $17,-389.45 on their 1976 tax liability. On June 24, 1987, the Stoelks filed their accounting showing they had been fully paid in December of 1984, but had nonetheless continued to receive payments. The amount of the overpayment to the Stoelks was $17,389.45.

16. In May of 1987, the Lindbergs were in default on the contract to purchase the motel and voluntarily surrendered the hotel to the Raneys. The Raneys moved to Douglas and took over the operation of the motel. They have been operating the motel ever since.

17. On June 1, 1987, after completion of an audit, the IRS assessed the Raneys a total of $17,461.62 for their tax years 1980 through 1983. This amount includes taxes, penalty, and interest for those years.

18. On May 15, 1990, the debtors filed this voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On June 11, 1990, the IRS filed its Proof of Claim claiming the amount of $48,517.85 owing for the tax years 1976 and 1980 through 1983. On August 28, 1990, the debtors filed this Objection to the IRS's Proof of Claim. On October 12, 1990, the IRS filed an Amended Proof of Claim which deleted the Raneys' tax liability for 1976. The remaining liability is $25,676.02, all due for the tax years 1980 through 1983.

19. Because the IRS did not obtain a Judgment for the Raneys 1974, 1975, and 1976 tax liabilities, the statute of limitations for collection of those liabilities expired on January 4, 1986. Accordingly, the amounts received on the 1974, 1975, and 1976 taxes after that time were overpayments. Pursuant to the February 25, 1983 Order, the IRS received a total of $19,855.07 after January 4, 1986, and applied it to the Raneys' uncollectible tax liability.

20. On July 22, 1987, the United States District Court entered a Judgment against the Stoelks and in favor of the IRS in the amount of $17,389.49. The IRS has not collected anything on this judgment. The Raneys have also been unsuccessful in their attempt to locate the Stoelks.

21. The Raneys did not file a request for a refund of the $19,855.07 paid on their uncollectible liability after January 4, 1986.

## DISCUSSION AND CONCLUSIONS

■ The IRS admits that the 1976 taxes are now uncollectible and had amended their Proof of Claim to delete any claim to the 1976 taxes. Under section 6511(a) of the Internal Revenue Code, the Raneys were entitled to recover the overpayment on their uncollectible taxes if they had filed a claim for a refund within two (2) years from the time the tax was paid or within three (3) years from the time the return was filed, whichever was later. 26 U.S.C. § 6511(a).

However, they did not file such a request for a refund. Despite this failure, they now argue that the March 25, 1987 Order of the District Court was an "informal request."

■ It is true that an informal refund claim would have been sufficient. *Missouri Pacific Railroad Co. v. United States*, 558 F.2d 596, 214 Ct.Cl. 623 (1977). However, in order for an informal claim to be valid, it must be in writing and inform the Service with sufficient clarity that the taxpayer desires refund or credit for some specified reason indicating erroneous or illegal collection. *Barenfeld v. United States*, 442 F.2d 371, 194 Ct.Cl. 903 (1971). What constitutes a valid informal claim must be decided on the facts of each case. *Newton v. United States*, 163 F.Supp. 614, 143 Ct.Cl. 293 (1958). The debtors have the burden of establishing that they submitted a valid and sufficient informal claim for a refund of the amounts collected. *A. David Co. v. Grissom*, 64 F.2d 279 (4th Cir.1933).

The March 25, 1987 Order of the District Court is not a valid informal claim for several reasons. First, it was not submitted to the IRS by the debtors. Instead, it was a directive issued by a third party, the District Court, to all parties receiving disbursements under the previous Judgment. Second, nowhere on the document does it inform the IRS that the Raneys are seeking a refund of any amounts paid. Third, nowhere on the document does it inform the Service of the basis upon which the debtors assert they are entitled to a refund.

There is simply no way that the Service could have deduced from the March 25, 1987 Order that the debtors were claiming a refund of taxes paid after the expiration of the collectibility period. Therefore, the debtors have not met their burden of establishing a valid informal claim for a refund. See 26 U.S.C. § 7422(a).

■ The debtors next argue that under the theory of equitable recoupment, they should be allowed to offset the statute barred overpayment against their 1980, 1981, 1982, and 1983 tax deficiencies.

Unfortunately, the doctrine of equitable recoupment does not apply to this case

because each of the taxable years, 1980 through 1983, are a separate event from the 1976 tax year. The case cited by debtors, *Bull v. United States*, involved an attempt to collect two (2) different types of taxes which both arose from the same transaction. 295 U.S. 247, 261, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935). Thus, the doctrine of *Bull v. United States* is inapplicable to the facts of this case.

■ The debtors also argue that the IRS should be equitably estopped from asserting its Proof of Claim. Upon review of the entire record, this court concludes that the doctrine of equitable estoppel is not applicable on the facts as established after the hearing. There is nothing in the record in this case to establish fraud or unfair conduct on the part of the IRS. Similarly, there is no evidence of any reliance by the debtors on any statement or action of the IRS. It appears that both the IRS and the debtors relied upon the District Court's February 25, 1983 Judgment. However, there is no basis whatsoever for imputing the mistake by the Clerk of Court to the IRS.

■ Similarly, the doctrine of equitable subordination under section 510(c) of the Bankruptcy Code does not apply to this case. The debtors argue that the claim of the IRS should be equitably subordinated to the claims of all other creditors. The court cannot not agree. The doctrine of equitable subordination adopted in section 510 is an extension of the common law doctrine of equitable subordination. Thus, a claim may be subordinated under section 510 only if its holder is guilty of some kind of misconduct. 3 COLLIER ON BANKRUPTCY ¶ 510.05 at 510–8 through 510–19 (15th ed.1991); *Kham & Nate's Shoes No. 2, Inc., v. First Bank*, 908 F.2d 1351 (7th Cir.1990).

As noted above, the record in this case does not establish any misconduct or unfairness on the part of the IRS. These two (2) parties, the Raneys and the IRS, were on equal footing regarding the February 25, 1983 Judgment. Both were subject to the Judgment and their rights to the Lindbergs' payments were determined by the Judgment. Each was in a position to monitor the progress of the payments or to ask for an accounting of the payments. The Raneys were free at any time to inquire as to the status of payments on the IRS's claims against them. They were free to direct such inquiry to either the Clerk of Court or to the IRS directly.

Where the Raneys had as much, or more, at stake in the matter than the IRS, there is absolutely no basis for imposing only on the IRS a duty to monitor the Clerk of Court's payments. Although the debtors argue that the IRS was at fault in the matter of the overpayment to the Stoelks, that accusation is not supported by any evidence.

This is a difficult case, because the overpayment to the Stoelks was not the result of negligence or fault by either party before the court today. The overpayment resulted in injury to both the IRS and the Raneys. The debtors own testimony established that it was Mr. Raney himself who initially brought the IRS' attention to the overpayment to the Stoelks. Despite the absence of fault, the debtors now ask this court to shift the entire injury resulting from the Stoelk overpayment to the IRS. There is no basis in law or equity for such a shift of harm to the other blameless party.

■ Section 6651(a)(2) of the Internal Revenue Code provides for assessment of a penalty for failure

> * * * to pay the amount shown as tax on any return specified in paragraph (1) on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, * * *

26 U.S.C. § 6651(a)(2).

The debtors have not established that the overpayments to the Stoelks, which started in January of 1985, were the cause of their inability to pay their 1980, 1981, 1982, or 1983 income taxes *when due.*

The taxes in question were all "due" well before January of 1985. Therefore, the

exception for the failure to pay for "reasonable cause" contained in section 6651(a)(2) is not applicable to the present case.

The court will enter an order denying the debtors' Objection to the IRS's Proof of Claim.